<pre>
                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE
</pre>

| YAME'TA L. WALL, | NO. C11-5308-JLR-JPD |
|---|---|
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Yame'ta L. Wall appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

### I. FACTS AND PROCEDURAL HISTORY

At the time of her administrative hearing, plaintiff was a 47 year-old woman with an 8th grade education. Administrative Record ("AR") at 25, 36. Her past work experience includes employment as a home health aide, fast food worker and a food service worker. AR at 25. Plaintiff was last gainfully employed in 2004. AR at 129.

REPORT AND RECOMMENDATION - 1

On August 7, 2007, plaintiff filed a claim for SSI payments. AR at 17. Plaintiff asserts that she is disabled due to cognitive disorder, NOS; major depressive disorder; anxiety disorder, NOS; and learning disorder, NOS. AR at 19. While some additional physical impairments were also asserted, none were found to be severe impairments or non-severe impairments that could not otherwise be accounted for by limitations contained in the RFC found by the ALJ, and are not the subject of the appeal. AR at 20

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 17. Plaintiff requested a hearing which took place on September 9, 2009. AR at 28-66. On November 2, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on a finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 17-27. Plaintiff's counsel submitted post-hearing medical evidence to the Appeals Council on January 3, 2011. However, the Appeals Council rejected the evidence due to its date and determined that the information (psychological profile evaluations by A. Ratcliffe, Ph.D.) related to a later time and would not be considered for this hearing which related to whether the plaintiff was disabled as of November 2, 2009, but could be submitted for use in a hearing to determine disability after November 2, 2009. AR at 2. Accordingly, the administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

# IV. EVALUATING DISABILITY

As the claimant, Ms. Wall bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments,

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On November 2, 2009, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since August 7, 2007, the application date.

2. The claimant has the following severe impairments: cognitive disorder, *not otherwise specified*; major depressive disorder; anxiety disorder, *not otherwise specified*; pain disorder; and, *rule out*, learning disorder, *not otherwise specified*. (emphasis in the original).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work [The full range of light exertional level work consists of the ability to: lift and/or carry and push and/or pull up to 10 pounds frequently and 20 pounds occasionally, sit up to 6 hours in an 8 hour work day with normal breaks; stand and/or walk at least 6 hours in an[ ] 8 hour day with normal breaks; and occasionally stoop.] as defined in 20 CFR 416.967(b) except should only bend and crouch on an occasional basis. The claimant is limited in her ability to perform simple repetitive tasks, but she could recall, remember and concentrate on the simple, repetitive tasks. She works best when working with the public on an occasional basis. The claimant can accept supervision and can interact appropriately when working with co-workers but the best positions are when she is limited or only occasionally working with those co-workers.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on XXXXX, 1962 and was 45 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[2]

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 7, 2007, the date the application was filed.

AR at 19-26. Footnote bracketed in text.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

1. Did the ALJ err in her treatment of the medical opinions of Dr. Knopes?

2. Did the ALJ err in the hypothetical posed to the Vocational Expert ("VE")?

3. Should evidence submitted post-administrative hearing from Dr. Ratcliffe be considered?

Dkt. No. 20 at 1.

## VII. DISCUSSION

### A. The ALJ Erred in Her Treatment of the Medical Opinions of David Knopes, Ph.D.

In November 2007, plaintiff was seen for a consultative psychological examination by Dr. Knopes. AR at 224-29. Dr. Knoppes reviewed her background information, interviewed plaintiff, and administered a variety of tests, including a 3-word wordlist, a digit span forward test, a forward and backward "world" spelling test, a 3-step command test, and an explanation of proverbs test, and questions to determine her fund of information. AR at 225-26.

Plaintiff also took the Wechsler Memory Scale-III test, with several sub-test components, and Trail Making tests. AR at 225-26. As to the accuracy of the tests, plaintiff was reported to be cooperative, although she had a "fairly short" attention span, "requiring the repetition of multiple verbal instructions. She demonstrated a low mental endurance, with increasing fatigue towards the end of the testing session. A valid test record was thought to have been obtained." AR at 226.

Dr. Knopes' prognosis found plaintiff to be significantly challenged. He opined:

> On the basis of current test results, Ms. Wall's prognosis for the independent return to full time competitive employment is poor from a cognitive memory standpoint. She demonstrates impairment in both verbal and visual immediate memory. Her visual memory appears to consolidate somewhat over delays, improving to a relative strength within her memory profile in the low average range. She is significantly helped by recognition format of verbal material, suggesting difficulties with initial encoding and attention to material, rather than impairment in memory formation more generally. Concentration and working memory were demonstrated in the borderline impaired range. While this pattern of memory performance is consistent with attention deficit disorder, it is also

> consistent with the impacts from psychiatric disturbance, specifically depression and anxiety, at the level that Ms. Wall reports. She had been prescribed antidepressants in the past but did not continue these due to a dislike of side effects. It is recommended that she receive a psychiatric consultation to evaluate for antidepressant medications as this is seen as a current confound to her cognitive and memory function.

AR at 227. Dr. Knopes further opined that she could have difficulty with the maintenance of her budget and recommended that a protective payee be appointed. AR at 228.

The ALJ rejected the majority of Dr. Knopes assessment.

> [T]he undersigned does reject the opinion of Dr. Knopes where it is inconsistent with the longitudinal record. The reason the undersigned partially rejects or discounts the opinion is because the claimant's activities as described in the medical records and by the claimant's own testimony provide for a higher level of functioning than Dr. Knopes opined or observed. For example, Dr. Knopes recommends a protective payee for the claimant based upon her memory impairment. However, Dr. Knopes either was not aware or did not know the claimant manages her adult son's finances with the fiduciary responsibility as representative payee without problem. Furthermore, she is performing most of her son's activities of daily living that include but are not limited to cooking, cleaning, laundry, scheduling, driving and attending to his medical appointments, suggesting a higher functioning level than opined. It appears there is some influence or perception in Dr. Knope[]s['] opinion that appears to rely heavily on the self report of the claimant, to which the undersigned cannot genuinely show to be conclusively reliable.

AR at 24. The ALJ also noted generally, without making reference to whether her general comments applied to physical or mental impairments, that the limitations claimant described could not be objectively verified with any reasonable certainty by "objective medical facts or diagnostic testing;" that if she were as limited as claimed, the ALJ could not attribute it to her medical condition, as opposed to other reasons in view of the relatively weak medical evidence of record; and that the claimant's symptoms or combination of symptoms could not serve as the basis of a finding of an impairment without medical signs or laboratory findings. *Id.* Finally, the ALJ cited opinions of the state agency medical consultants who reviewed the medical records, and the ALJ was "more inclined to be persuaded" by these opinions. AR at

REPORT AND RECOMMENDATION - 8

24. The ALJ noted that the plaintiff's primary care physicians (who are not psychiatrists or psychologists) did not note any restrictions "relative to mental or physical or impairments or limitations." *Id.*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

Plaintiff argues that the ALJ (1) failed to acknowledge the existence and validity of the testing conducted by Dr. Knopes; (2) failed to give proper weight to the opinions of a specialist; (3) engaged in speculation; and (4) erred in her assessment of the facts surrounding the joint payee recommendation and plaintiff's daily activities. Dkt 20 at 10-13. The Commissioner argues that the ALJ's evaluation was reasonable and supported by substantial evidence principally because she could care for her son, and needed no representative payee to do so. Dkt. 25 at 9-11.

The ALJ did err. The ALJ offered generalized reasons to find the plaintiff not disabled, primarily the lack of objective evidence, to support the conclusion reached. This is an appropriate reason to discount the opinions of medical providers. However, as to plaintiff's mental impairments, the ALJ ignored the "objective" evidence provided by the testing conducted by Dr. Knopes. The interpretation of the Wechsler Memory Scale – III tests resulted in very low scores, including six indexes (Auditory Immediate Index, Visual

REPORT AND RECOMMENDATION - 10

Immediate, Immediate Memory Index, Visual Delayed Index, General Memory Index, and Working Memory Index) in the third percentile or lower. AR at 229. The test was seen as valid (AR at 226), and perhaps this is also buttressed by the fact that plaintiff scored in the 9th percentile in two categories (Auditory Delay and Auditory Rec. Delayed). AR at 229. As noted above, Dr. Knope also administered the Trail Making tests and conducted a mental status examination. In short, for psychological analysis, these tests were the "objective" medical evidence of record. Consequently, the "lack of objective tests or diagnostic testing" cannot serve as a basis for rejecting Dr. Knopes' opinion. In addition, the ALJ suggestion that Dr. Knopes' opinion must have been based on plaintiff's self-reporting does not withstand scrutiny, in light of the testing conducted.

The ALJ also relied heavily on Dr. Knopes' recommendation that a protective payee be established to discount Dr. Knopes' opinions, and the ALJ's belief that Dr. Knopes "either was not aware or did not know the claimant manages her adult son's finances with the fiduciary responsibility as representative payee without problem." AR at 24. There are at least three problems with this conclusion. First, Dr. Knopes' report indicates he was aware of plaintiff's financial situation. He reported that plaintiff lived in an apartment with the younger of her two sons who had learning disabilities and special needs, and that their "household is supported through child support and disability support for her child." AR at 224. Obviously, Dr. Knopes was aware of her and her son's financial situation. Second, there is no basis cited in the record to support the ALJ's statement that plaintiff could handle the responsibility without problem. Indeed, it appears that Dr. Knopes inquired about this subject in greater detail than the ALJ did. Before concluding that a representative payee might be appropriate, Dr. Knopes noted that plaintiff "denied requiring assistance with self-care, but described her overall process as slow. She reported managing household income with an *unspecified 'system.'*" AR at 226

REPORT AND RECOMMENDATION - 11

(italics added). In contrast, at the administrative hearing, the ALJ simply asked "And so you are living with him and off of his disability income," to which plaintiff responded "Yes." AR at 34. This exchange does not the ALJ's conclusion that plaintiff manages her funds "without problem," which was used by the ALJ to collaterally discredit the opinions of Dr. Knopes.

This matter must be remanded to the Commissioner to reevaluate the medical opinions of Dr. Knopes, consistent with the *Orn* hierarchy set forth above.

The ALJ also cited plaintiff's daily activities, with particular emphasis on the care she provides to her younger disabled son, to reach the conclusion that plaintiff was not disabled. AR at 24. Daily activities inconsistent with a doctor's opinions of limitations are a valid reason to discount a physician's opinion. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). In this vein, the plaintiff's daily activities support the ALJ's findings regarding the functional impact of plaintiff's physical impairments. However, it is not readily apparent how these activities provide support to undercut the opinions of Dr. Knopes regarding plaintiff's mental impairment. They may, in fact, do so, it is a proposition that is not self-evident (indeed, Dr. Knopes was aware of her daily activities in caring for her son), and accordingly, on remand, if the ALJ continues to believe that plaintiff's daily activities undercut the opinions of Dr. Knopes' opinions regarding plaintiff's mental impairments, the specific evidence used in reaching this conclusion should be provided.

B. The ALJ May Have Erred in Her Hypothetical to the VE

As noted above, the ALJ may have erred in her evaluation of Dr. Knopes' opinions, which, if credited, could have a significant impact on plaintiff's RFC. On remand, if the ALJ concludes that the reevaluated assessment of Dr. Knopes' opinion impacts the plaintiff's RFC, then the VE should be asked whether there are any jobs that plaintiff can perform. The

hypothetical should include all of plaintiff's limitations, although this matter is only being remanded for further consideration regarding her mental impairments.

### C. On Remand, the ALJ Should Consider the Opinions of Dr. Ratcliffe

In May and November 2010, plaintiff was evaluated by the Washington State Department of Social and Health Services. This was after the November 2, 2009 date of the ALJ's opinion denying benefits. The reports were submitted to the Appeals Council on January 3, 2011, while the appeal was pending before the Appeals Council. In the Order Denying the Appeal, the Appeals Council considered the reports, but stated that "the Administrative Law Judge decided your case through November 2, 2009. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before November 2, 2009." AR at 2.

Plaintiff argues the reports relate to the same time period, because they also refer to and confirm Dr. Knopes' opinions. Plaintiff argues that the new report is reason to remand for a new hearing.

Clearly, the ALJ did not err in failing to consider this evidence, as it was not before her when she issued her decision. Nevertheless, plaintiff wants the Court to consider it now in determining whether to reverse the ALJ's decision, and whether such reversal should be for an outright award of benefits or for further administrative proceedings. First, however, the Court must determine whether the threshold question of whether the Court can properly consider this evidence. The Commissioner, relying on the Ninth Circuit's decision in *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993), argues that courts are to examine evidence only considered by the Appeals Council when determining whether substantial evidence supports the decision. Because the Appeals Council returned the evidence, determining that it did not relate to the period at issue, the Commissioner argues that the Appeals Council finding that evidence should

REPORT AND RECOMMENDATION - 13

not be included in the record under 20 C.F.R.§ 416.1470(b) is not a final decision subject to judicial review in this action, *citing* 20 C.F.R. §§416.1481, 422.210.

Citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030, n. 2 (9th Cir. 2007), plaintiff argues that if the Appeals Council "considered" post-administrative hearing submitted materials, then this Court may do so as well. The question is whether the review of post-hearing materials to determine if they relate to the time period at issue and the rejection of the materials as outside the time period constitutes "considering" the materials. *Lingenfelter* does not address this issue.

In *Mayes v. Massanari,* 276 F.3d 453, 462 (9th Cir.2001), the Ninth Circuit applied the standard set forth in 42 U.S.C. § 405(g) to determine whether to remand that case in light of additional evidence submitted to the Appeals Council. *Id.* at 461-62. Under that standard, to justify remand, the claimant must show that the additional evidence is both "new" and "material" to determining disability, and that he or she "had good cause for having failed to produce that evidence earlier." *Id.* at 462.

To be material under 42 U.S.C. § 405(g), "the new evidence must bear 'directly and substantially on the matter in dispute.'" *Id.* (citation omitted). In addition, the claimant must demonstrate a "reasonable possibility" that the new evidence "would have changed the outcome of the administrative hearing." *Id.* (citation omitted). To demonstrate "good cause," the claimant must show that the new evidence "was unavailable earlier." *Id.* at 463. The good cause requirement will not be met by "merely obtaining a more favorable report once his or her claim has been denied." *Id.*

In *Mayes*, the Ninth Circuit expressly held it had not decided whether good cause is required to review evidence submitted for the first time to the Appeals Council, or whether good cause is required only when such evidence is submitted for the first time to district court.

REPORT AND RECOMMENDATION - 14

*See id.,* at 461 n. 3. At this point, however, it is not necessary to decide this issue. Because this matter is being remanded due to errors regarding the evaluation of the medical evidence, it is unnecessary to reach a decision on whether a remand for further proceedings or an award of benefits would be appropriate based simply on the new evidence submitted but rejected by the Appeals Council. However, because this case is being remanded and because the evidence was before the Appeals Council, on remand the ALJ should consider the evaluation and make a determination as to the weight to be accorded to the opinions of Dr. Ratcliffe.

VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings regarding plaintiff's mental impairments not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 31st day of January, 2012.

*/s/ James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge